IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MEGAN D., | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| MICHELLE KING,[1] | : | |
| Acting Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO. 24-1807 |

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                    February 7, 2025

Megan D. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Plaintiff has filed a brief in support of her request for review, the Commissioner has responded to it, and Plaintiff has replied. For the reasons set forth below, Plaintiff's request for review is granted.

### I.    PROCEDURAL HISTORY[2]

In 2014, Plaintiff applied for DIB and SSI, alleging disability that commenced on December 15, 2011. Pl. Br. at 1. The claim was denied; therefore, Plaintiff requested a hearing. *Id.* On March 17, 2016, Plaintiff appeared for a hearing, before George C. Yatron, Administrative Law Judge ("ALJ Yatron"). Pl. Br. at 2. On April 12, 2016, ALJ Yatron, using the sequential

---

[1] Michelle King became Acting Commissioner of the Social Security Administration on January 21, 2025. Pursuant to Fed. R. Civ. P. 25(d), Ms. King is substituted as Defendant in this suit. According to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.
[2] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Matters Complained of On Appeal ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply in Support of Request for Review ("Reply"), and the administrative record. ("R.").

evaluation process ("SEP") for disability,[3] issued an unfavorable decision. Pl. Br. at 2. After the Social Security Administration's Appeals Council denied review, Plaintiff sought judicial review in this court. Pl. Br. at 2. On March 13, 2019, the court remanded the case for further review. Pl. Br. at 2.

A second, telephonic hearing was held before ALJ Elana Hollo ("the ALJ"), on June 23, 2020. Pl. Br. at 2. Applying the SEP, the ALJ denied benefits, on July 6, 2020. This time, the Appeals Council remanded the case to the ALJ, on October 7, 2022. Pl. Br. at 2. The ALJ held a third, telephonic hearing, on February 9, 2023; Plaintiff, represented by counsel, a vocational expert ("the VE"), and a medical expert ("the ME") testified. Pl. Br. at 2; R. 694-724. At this hearing, Plaintiff amended her alleged period of disability to start on December 15, 2011 and end on April 1, 2022, when she resumed working. R. 690-91. The ALJ, applying the SEP, again found that Plaintiff was not disabled, on February 27, 2023. R. 620-38. The Appeals Council denied

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

review, on February 28, 2024. R. 607-11. Plaintiff now seeks judicial review and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.   FACTUAL BACKGROUND

A.   <u>Personal History</u>

Plaintiff, born on August 17, 1985, R. 721, was 26 to 36 years old during the relevant period of alleged disability. She has no past relevant work. R. 720.

B.   <u>Plaintiff's Testimony</u>

At the February 9, 2023 administrative hearing, Plaintiff testified about her limitations. She stated that her overall condition had not changed much since the last hearing, on June 23, 2020, but her new medication regimen controlled her symptoms sufficiently to allow her to work. R. 694-95. Although Plaintiff still experienced mood swings, they were less frequent. R. 696. Her memory had not improved, but her concentration was better. R. 696.

At the June 23, 2020 hearing, Plaintiff explained that every day she felt helpless; many days she lacked motivation to get out of bed; in addition, she was very short-tempered. R. 663. Her medications contributed to her listlessness and inability to concentrate.[4] R. 664. Plaintiff, who suffers from bipolar disorder, stated that her manic periods lasted for two weeks at a time; her depressive periods could persist for months. R. 675. During manic phases, Plaintiff was agitated, irritable and angry. R. 676. During depressive periods, she felt hopeless, remained in bed for days at a time, and entertained suicidal thoughts. R. 675-76. Anxiety made Plaintiff want to avoid being in public. R. 676.

Plaintiff's concentration was so poor that she could no longer read. R. 666-67. She had difficulty completing tasks; she would stop them for no reason and not complete them. R. 667.

---

[4] Plaintiff testified that her medications caused her to fall asleep while sitting down. R. 669.

Plaintiff tried to avoid people, because she reacted badly and confronted others for no reason. R. 668.

Plaintiff testified that she could not perform any household chores. R. 670. Once a month, she went food shopping accompanied by her brother. R. 671. Plaintiff treated with a therapist and psychiatrist; they were in the same office building, which was within walking distance of her residence. R. 671.

C.     Medical Expert's Testimony

The ME stated that her testimony was based solely upon her review of Plaintiff's medical records. R. 697-98. Significantly, she explained that she was a psychologist, not a psychiatrist, and, therefore, could not offer any opinion with respect to appropriateness of Plaintiff's medication regimen. R. 699. The ME did opine that Plaintiff did not meet the requirements of any mental health listed impairment and that, with respect to the four domains of mental functioning, Plaintiff had two areas of moderate limitation and two areas of mild limitation. R. 702.

The ME was asked about Dr. Heckman's 2015 opinions expressed in Exhibit 8F, which found marked limitations in several areas of mental functioning. Although the ME stated that she did not "necessarily disagree" with Dr. Heckman's opinions, she noted that her opinions were based upon a review of additional records not available to Dr. Heckman. R. 706-07. The ME, when asked about Dr. Ryser's 2020 opinions found in Exhibits 20F and 21F, noted that some of Dr. Ryser's diagnoses were not contained in the DSM[5] and that she had access to more records than Dr. Ryser. R. 707-08. The ME conceded that the severity of Plaintiff's symptoms varied over time; hence, she would be more limited on certain days. R. 708, 711. Finally, she refused to

---

[5] The ME was not asked to identify "the DSM", but the court assumes she was referring to the Diagnostic and Statistical Manual of Mental Disorders, \ a treatise relied upon by mental health providers to diagnose mental health conditions.

4

opine about whether, during the relevant period, Plaintiff would have been able to show up for work reliably. R. 718.

D.     Vocational Testimony

The ALJ asked the VE to consider a person of Plaintiff's age and education; limited to medium[6] work; capable of frequent interaction with supervisors, the general public, and coworkers; unable to perform work involving shared tasks with coworkers; able to perform work in a low stress job, defined as having only occasional decision-making and only occasional changes in the work setting; able to understand, remember, and carry out detailed but uninvolved written or oral instructions; not capable of assembly line work or work that requires hourly quotas; the work should be as self-paced as possible, meaning any production requirements can be accomplished by the end of the workday or shift. R. 721. The VE identified the following unskilled[7] jobs: (1) industrial cleaner (20,000 positions nationally); (2) hand packager (40,000 positions nationally); and (3) marker clerk (200,000 positions nationally). R. 722. The last position was a light[8] job, because the restriction to self-paced work eliminated any other medium jobs. R. 722. The VE then considered the same person with the additional limitations of being absent from work four or more times per month. R. 722. The VE opined that the additional condition would eliminate all jobs. R. 722. The VE further opined that employers would not tolerate an employee missing more than one day of work per month or being off task for more than 10% of the workday. R. 722-23.

Plaintiff's attorney asked the VE if a person could work, if they had marked limitation –

---

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).
[7] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).
[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

5

meaning more than one-third of the time being unable to perform a task – in the ability to carry out simple, one to two step instructions. R. 723. The VE opined that such a person could not work. R. 723. Next, counsel asked the VE if a person could work if they had moderate limitation – meaning symptoms interfere with performance of a task up to one-third of the workday – in the ability to maintain attention and concentration, be punctual, and perform at a consistent pace. R. 723-24. Again, the VE opined that this limitation would preclude all work. R. 724.

### III.   THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2011.

2. [Plaintiff] not engaged in substantial gainful activity since December 15, 2011, the alleged onset date (20 CFR 404.1572 *et seq.* and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: major depressive disorder; bipolar disorder I; bipolar II; anxiety disorder; obesity; and posttraumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. After careful consideration of the entire record, the undersigned finds that, [Plaintiff] had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can have only frequent interaction with supervisors, the general public, and with coworkers and perform no work involving shared tasks with coworkers. She can perform work in a low stress job, defined as having only occasional decision making and only occasional changes in the work setting. She can understand, remember, and carry out detailed but uninvolved written or oral instructions, but no assembly line work or work that requires hourly quotas, and this work should be as self-paced

     as possible, meaning any production requirements can be accomplished by the end of the workday or shift.

6.  [Plaintiff] has no past relevant work (20 CFR 404.1565 and 416.965).

7.  [Plaintiff] was born on August 15, 1975 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  [Plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not an issue because [Plaintiff] does not have past relevant work (20 CFR 404.1568 and 416.968).

10.  Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11.  [Plaintiff] has not been under a disability, as defined in the Social Security Act, from December 11, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

R. 623-24, 626, 636-38.

## IV. DISCUSSION

A. <u>Standard of Review</u>

  Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation

omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ, and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.     <u>Burden of Proof in Disability Proceedings</u>

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in

functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.     Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff had no past relevant work, she could perform other unskilled jobs that exist in the national economy and, hence, was not disabled. R. 620-38. Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by: (1) improperly weighing favorable medical evidence and, therefore, improperly determining her mental residual functional capacity ("RFC"); and (2) improperly weighing her testimony concerning her symptoms. Pl. Br. at 1-22.[9] The Commissioner counters that Plaintiff's arguments lack merit. Resp. at 1-21. This court finds that Plaintiff's request for review should be granted.

1. Opinions of Drs. Heckman and Ryser

Plaintiff argues that the ALJ committed reversible error, because she failed to afford adequate weight to the opinions of treating psychiatrist, Harold Heckman, MD, and consultative psychologist, Christina Ryser, Ph.D. Pl. Br. at 3-16. This court finds that the ALJ committed reversible error when considering Dr. Heckman's opinions, which were corroborated by Dr. Ryser.

Dr. Heckman prepared a Mental Impairment Questionnaire, on November 14, 2015. R. 567-571.[10] Dr. Heckman first treated Plaintiff on February 6, 2015 and monthly thereafter. R. 567. Significantly, he opined that Plaintiff had marked limitation in the ability to understand and

---

[9] The court employs the pagination the Clerk of Court imposed on Plaintiff's Brief, because she has two pages numbered as page one.
[10] The record contains two copies of the last page of Dr. Heckman's Questionnaire, which is Exhibit 8F. The court will only cite the first of the two, which is R. 571.

9

remember one-to-two step instructions and that Plaintiff would miss two to three days of work per month. R. 570-71. The VE opined that either of these limitations would preclude all work. R. 723.

Dr. Ryser completed a Mental Impairment Questionnaire (Exhibit 20F), on June 10, 2020. R. 2229-33. She disclosed that she never treated Plaintiff and merely evaluated her condition. R. 2299. Dr. Ryser opined that Plaintiff had marked limitation in most areas of mental functioning and moderate limitation in maintaining concentration and attention. R. 2232. She opined that Plaintiff would miss more than three days of work per month. R. 2333. The VE opined that either moderate limitation in maintaining concentration or attention or the level of absenteeism Dr. Ryser predicted would preclude all work. R. 723-24.

If accepted, either Dr. Heckman or Dr. Ryser's opinions would render Plaintiff disabled. Therefore, the ALJ had a duty to explain why she rejected them. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). Furthermore, because Dr. Heckman was a treating physician, his opinions would be given controlling weight, if his opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [was] not inconsistent with the other substantial evidence in [Plaintiff's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[11] A treating source's opinion is "well-supported" even if it is not directly supported by all the medical evidence in the record; it is "not inconsistent with other substantial evidence" in the record even if some evidence in the record is inconsistent with it. Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, *3.

The ALJ explicitly considered Drs. Heckman and Ryser's opinions, afforded them little weight, and rejected them to the extent they imposed limitations greater than those found in the

---

[11] Because Plaintiff filed her claim before March 27, 2017, these regulations, rather than newer ones, apply to this case.

ALJ's RFC assessment. R. 636. This analysis complied with the ALJ's *Adorno* duty to provide an explanation for rejecting them. However, the question remains whether her explanation was proper.

Dr. Heckman was a treating physician, hence, the ALJ needed to determine if his opinions were entitled to controlling weight. Her decision reveals that she failed to do so. R. 636. The ALJ's entire discussion concerning the weight she would afford to Dr. Heckman's disabling opinions consists of one paragraph. R. 636. In that brief discussion, she never mentions the possibility of affording Dr. Heckman's opinions controlling weight, nor does she cite the governing regulations or SSR 96-2p. Furthermore, the ALJ does not consider that Dr. Ryser's opinions corroborate those of Dr. Heckman. Moreover, she fails to acknowledge that the ME, whom the ALJ does credit, R. 636, admitted that she did not disagree with Dr. Heckman's opinions. R. 706. Faced with this record, in which there is no dispute that Plaintiff has severe mental health impairments and other doctors in the record corroborate Dr. Heckman's opinions concerning the limitations caused by those impairments, the ALJ failed to apply properly the governing regulations and SSR 96-2p; hence, she failed to appreciate that Dr. Heckman's opinions might be entitled to controlling weight. This error is not harmless, because, if accepted, Dr. Heckman's opinions are disabling. R. 723. Hence, this case should be remanded to afford the ALJ the opportunity to explicitly and properly consider whether Dr. Heckman's opinions are entitled to controlling weight. If so, Plaintiff is disabled.

2. <u>Plaintiff's Subjective Symptoms</u>

Plaintiff maintains that the ALJ failed to properly assess her testimony about her symptoms. Pl. Br. at 16-21. This court finds that the ALJ erred in this regard.

After summarizing Plaintiff's testimony about her symptoms, the ALJ stated that she was

discounting it because the record revealed improvement over time. R. 628. The ALJ also noted that despite initial hospitalizations in 2012, outpatient treatment ultimately resulted in improvement, despite periods of worsened symptoms. R. 628. She also relied upon Plaintiff not residing in a highly structured environment, not participating in intensive outpatient treatment, and reports of ongoing suicidal ideation omitted from the record. R. 628.

The ALJ's decision is flawed, because she failed to recognize that Plaintiff was being evaluated for a ten-year period of alleged disability: December 15, 2011 to April 1, 2022. Thus, she was required to consider whether, at any point in that decade, Plaintiff's symptom description was supported by the record for the requisite duration of one year. One obvious place in the record that Plaintiff's symptom testimony is supported was in 2012, when Plaintiff was hospitalized with psychiatric symptoms. At times Plaintiff's symptoms worsened, a fact the ALJ acknowledged. R. 628. The ALJ needed to calculate the length and instances of symptom exacerbation and consider whether, for those periods, Plaintiff's testimony is sufficiently supported to be accepted. The ALJ failed to so calculate. This court cannot cure the ALJ's failure, because it must only consider justification(s) the ALJ provided in her decision. *Fargnoli*, 247 F.3d at 44 n.7. Having identified a clear deficiency in the ALJ's consideration of Plaintiff's testimony, this court has no choice but to order a remand.

An implementing order and order of judgment follow.